IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARK E. BENSON,

       Plaintiff,

v.             CIVIL ACTION NO. 3:05-0384

CSX TRANSPORTATION, INC.,
a corporation; GATX FINANCIAL CORPORATION,
d/b/a GATX Rail, a Delaware corporation;
ARKEMA, INC., f/k/a Atofina Chemicals, Inc.,
a Pennsylvania corporation; PADUCAH & LOUISVILLE
RAILWAY, INC., a Kentucky corporation; and
RESCAR, INC., a/k/a Rescar Industries, Inc.,
a Texas corporation,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

   Pending before the Court is a motion by Defendant Rescar, Inc., a/k/a Rescar Industries, Inc., (hereinafter Rescar) to dismiss Plaintiff Mark E. Benson's Second Amended Complaint against it for failing to comply with the applicable statute of limitations.  For the following reasons, the Court **DENIES** Rescar's motion.

**I.
FACTS**

   Plaintiff asserts that on May 7, 2003, he was working as an engineer for Defendant CSX Transportation, Inc., when a tank car he was maneuvering leaked hydrochloric acid.  As a result, Plaintiff asserts that he has suffered irreparable damage to his lungs which has disabled him from railroad employment.  On May 5, 2005, Plaintiff filed the present action against CSX Transportation, Inc.; GATX Financial Corporation, d/b/a GATX Rail; Arkema, Inc., f/k/a Atofina

Chemicals, Inc.; and Paducah & Louisville Railway, Inc. Plaintiff did not file his Second Amended Complaint asserting claims of negligence, strict liability, and breach of warranties against Rescar until January 19, 2006. Rescar now moves to dismiss the action against it for Plaintiff's failure to comply with the applicable statute of limitations.

## II.
## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted. A Rule 12(b)(6) motion tests the sufficiency of the pleading. It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted). In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id.* Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.
## DISCUSSION

In its motion, Rescar argues that Plaintiff's claims must be dismissed because he failed to file his action within the two-year statute of limitations found in West Virginia Code § 55-2-12.[1] However, Plaintiff asserts that he did not know of Rescar until September 23, 2005, when Arkema, Inc. disclosed that, four days prior to Plaintiff's injury, the same tank car had leaked hydrochloric acid and Rescar had repaired it. Plaintiff states that documents from Arkema, Inc. and

---

[1]In relevant part, this section provides: "Every personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" W. Va. Code § 55-2-12, in part.

a report from Plaintiff's expert show that Rescar used the wrong seal to repair the leak, which resulted in corrosion and the subsequent leak that injured Plaintiff. Plaintiff states that, prior to this time, all the parties, except for Arkema, Inc., were totally unaware of the previous leak and repair.[2] Following this disclosure, Plaintiff sought a stipulation from the other defendants to amend the Complaint to add Rescar as a defendant. Thereafter, on January 19, 2006, Plaintiff moved this Court to allow the Second Amended Complaint.[3] On January 20, 2006, the Court granted Plaintiff's Motion to Amend.

In his Response to Rescar's Motion to Dismiss, Plaintiff argues that, under the facts of this case, the Court should rule that the statute of limitations was tolled under the discovery rule and, therefore, his claims against Rescar were timely filed. Both sides cite *Cart v. Marcum*, 423 S.E.2d 644 (W. Va. 1992), in support of their positions. In *Cart*, the plaintiff attempted to enter into an agreement with a Mr. Jefferson who was to cut, remove, and sell certain timber off Plaintiff's land. *Id*. at 646. After becoming concerned when Mr. Jefferson would not sign a written contract memorializing the deal, the plaintiff fenced off his property and told Mr. Jefferson not to do anything until the contract was signed. *Id*. Paying no heed to the plaintiff's warning, Mr. Jefferson sold the timber he had cut and absconded with the proceeds. *Id*. Shortly thereafter, the plaintiff

---

[2]The Court notes that another defendant, Paducah & Louisville Railway, Inc. (P&L), indicates in its recently filed Motion for Summary Judgment that, at the time of the first leak, it was advised by someone representing himself to be an employee of Rescar about the nature of the problem and that a repair was made by Rescar before the tank car was released back to P&L. The fact that P&L also may have known of the leak and repair before Plaintiff learned of it in discovery does not impact today's decision.

[3]According to an affidavit attached to the motion for leave to file the Second Amended Complaint, not all the parties signed the stipulation.

discovered the theft. *Id.* More than two years after the alleged conversion took place, the plaintiff filed a lawsuit against Mr. Jefferson and two individuals in the logging business who assisted him in taking and selling the timber. *Id.*

In discussing whether the statute of limitations should be tolled under these circumstances, the West Virginia Supreme Court stated that, "[u]nder the 'discovery rule,' the statute of limitations is tolled until the plaintiff knows or by reasonable diligence should know that he has been injured and who is responsible." *Id.* at 647. In analyzing the history of the rule, the court noted its piecemeal evolution and expansion to various situations. *Id.* at 647-48.[4] The court then expanded the rule to apply to all torts unless prohibited by statute. *Id.* However, in doing so, the court was cautious to say that it was not eviscerating the statute of limitations and that it should continue to be applied "unless the handicaps to discovery at the time of the injury are great and are largely the product of the *defendant's* conduct in concealing either the tort or the wrongdoer's identity." *Id.* at 648 (emphasis original). Therefore, the court said that the discovery rule must "be applied with great circumspection on a case-by-case basis only where there is a strong showing by the plaintiff that he was *prevented* from knowing of the claim at the time of the injury." *Id.* (emphasis original). The court further explained in syllabus point 3 of *Cart*:

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the

---

[4] The court discussed the discovery rule's evolution from medical malpractice to legal malpractice, products liability, faulty construction, and invasion of privacy. *Id.*

>                    defendant prevented the plaintiff from knowing of the
>                    wrong at the time of the injury.

Syl. Pt. 3, *Cart*. In applying this standard, the court found in light of the facts before it that the plaintiff clearly believed Mr. Jefferson may take the timber in advance of the actual theft and, therefore, he could not reasonably argue that he was unaware of who stole the timber at the time of the injury. *Id*. at 649. Moreover, the plaintiff discovered the identities of the two individuals who assisted Mr. Jefferson a year before he filed suit. Thus, the court determined there were no reasons why the statute of limitations should be tolled under the discovery rule for the two individuals who assisted Mr. Jefferson. *Id*.[5]

       Here, Rescar asserts that under the analysis in *Cart* the discovery rule should not apply because Plaintiff has failed to set forth any evidence that Rescar took any actions which prevented him from knowing about the previous leak and repair or Rescar's identity. In addition, Rescar asserts that, if Plaintiff would have acted with reasonable diligence in investigating the tank car at issue, he would have discovered this information. Therefore, Rescar argues that Plaintiff should not receive the benefit of the discovery rule.

       The Court agrees with Rescar that Plaintiff has failed to demonstrate any action by Rescar which prevented Plaintiff from knowing its identity or alleged involvement with the tank car. However, the Court's inquiry cannot stop there. Not only are the facts of *Cart* distinguishable from the present case, the Court notes that both parties have failed to mention that the application of the

---

[5] The court did not decide the issue of whether the discovery rule would apply to any claims made against Mr. Jefferson. *Id.* at 649 n.15.

decision in *Cart* was modified in *Gaither v. City Hospital, Inc.*, 487 S.E.2d 901 (W. Va. 1997). *See McCoy v. Miller*, 578 S.E.2d 355, 358 (W. Va. 2003) (per curiam) (recognizing *Gaither* modified the application of the discovery rule in West Virginia).[6] In *Gaither*, the plaintiff was injured in a motorcycle accident and was transported to City Hospital. 487 S.E.2d at 903. From City Hospital, the plaintiff was taken to the Maryland Institute for Emergency Medical Services Systems ("Shock Trauma"), where his right leg was ultimately amputated. *Id.* 903-04. More than two years after the accident, the plaintiff learned for the first time that the Shock Trauma physicians believed a delay in his transfer from City Hospital to Shock Trauma contributed to his amputation. Prior to this time, the plaintiff believed his leg was amputated solely because of the accident. *Id.* at 904. The plaintiff brought a malpractice action against City Hospital, and City Hospital moved for summary judgment based upon the statute of limitations. *Id.* at 905.

City Hospital argued the plaintiff knew of his injury at the time of the accident and failed to exercise his duty of reasonable diligence to investigate and determine why his leg was amputated. *Id.* In addition, City Hospital pointed to the fact that it did nothing to prevent the plaintiff from knowing of the alleged malpractice at the time of the injury. *Id.* at 908. Therefore, City Hospital asserted that the plaintiff should not have the benefit of the discovery rule.

---

[6]*See also Miller v. Monongalia County Bd. of Educ.*, 556 S.E.2d 427, 433 n.3 (W. Va. 2001) (Starcher, J., concurring) (observing that *Gaither* either modified or overruled *Cart* and "subsequent decisions . . . make clear that *Gaither* . . . is the preferred statement of the discovery rule; *Cart* . . . governs only those cases where the plaintiff is compelled to allege some deed by the defendant concealed the cause of action from the plaintiff").

In rejecting City Hospital's argument, the court cited the holding in *Cart*. *Id*. at 907. In specifically citing syllabus point 3, the court stated the "rule was crafted because in some circumstances causal relationships are so well established that we cannot excuse a plaintiff who pleads ignorance." *Id*. For instance, the court said there are times where a patient may immediately know that something has gone wrong with the medical treatment received despite the fact the patient may not know the precise act of malpractice. *Id*. (citing *Harrison v. Seltzer*, 268 S.E.2d 312, 315 (W. Va. 1980). In those instances, the statute of limitations begins to run at the time the adverse results are known to the plaintiff. *Id*. However, the court distinguished those types of cases from the facts before it where a plaintiff has no knowledge suggesting wrongdoing by a defendant. *Id*. at 908. As the court explained, "*Cart* addresses the opposite situation, where a plaintiff does or should reasonably know of the existence of an injury *and* its cause." *Id*. (emphasis original). It is in situations like that presented in *Cart* that "a plaintiff must 'make a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship'" in order to apply the discovery rule. *Id*. (quoting *Cart*, 423 S.E.2d at 648).

In deciding whether the discovery rule should apply to situations where a plaintiff knows of the injury but is unaware that someone else may be responsible for the injury, the court quoted from its prior decision in *Hickman v. Grover*, 358 S.E.2d 810 (1987), which provides:

> "Justice is not done when an injured person loses his right to sue before he discovers if he was injured or who to sue. . . .
>
> In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of

-7-

> the product, and (3) that the product had a causal relation to his injury. This rule in products liability cases will allow the plaintiffs a fair chance to sue, while upholding the purposes behind the statute of limitations.
>
> In a progressive or creeping disease or injury, many plaintiffs will often not realize that they were actually injured. *See, e.g., Louisville Trust Co. v. Johns-Manville Products Corp.*, 580 S.W.2d 497 (Ky.1979) (asbestos). Other plaintiffs will realize they are injured, but have no reason to connect the product with the injury. *See e.g., Mack v. A.H. Robins Co.*, 573 F.Supp. 149 (D.Ariz.1983) (Dalkon Shield). In both instances, it would be a miscarriage of justice to hold that the plaintiff's claim was barred by the statute of limitations. A plaintiff does not have enough information to sue until he knows that he has been injured, he knows the identity of the maker of the product, and he knows that the product had a causal relation to his injury. Under the new rule, these claims would be protected from the bar of the statute of limitations."

*Gaither*, 487 S.E.2d at 908-09 (quoting *Hickman*, 358 S.E.2d at 813-14 (footnote from *Hickman* omitted).[7]

The court in *Gaither* found that this quote from *Hickman* should be modified slightly and apply to all tort actions. *Id*. at 909. Therefore, the court held in syllabus point 4:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule

---

[7] In *Hickman*, the plaintiff was injured when an air tank exploded. 358 S.E.2d at 811. The plaintiff sued the owner of the air tank, but he did not sue the manufacturer until after his counsel received notice that the tank was defective. *Id*. The court found the discovery rule did not apply in this situation because the plaintiff knew he was injured and he knew the cause of the injury at the time of the event, and two days later fragments of the air tank clearly showing the manufacturer's name and address were found. 358 S.E.2d at 811, 814.

> the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. Pt. 4, *Gaither*. Under this rule, the court explained that the statute of limitations is tolled "until a plaintiff, acting as a reasonable, diligent person, discovers the essential elements of a possible cause of action, that is, discovers duty, breach, causation and injury." *Id*. at 909.

Applying this standard to the facts before it, the court cautioned that it is not necessary for a plaintiff to actually recognize the negligent conduct, rather the statute begins to run when the patient becomes aware, or reasonably should be aware, "that medical treatment by a particular party has caused a personal injury[.]" *Id*. Thus, the court concluded that, although the plaintiff in the case before it was aware of his injury and knew that City Hospital owed him a duty of care at the time of his injury, there was nothing to suggest that he had any reason to know within two years of his accident "that City Hospital may have breached its duty and failed to exercise proper care, or that City Hospital's conduct may have contributed to the loss of his leg." *Id*. at 910. In addition, the court noted that the hospital did not set forth any circumstances which would have alerted the plaintiff to investigate a malpractice claim against the hospital within two years of the accident. Therefore, the court found the plaintiff had no affirmative duty to seek hospital records earlier than he did and it was irrelevant whether he could have requested the records within the two-

year period. *Id.*[8]  Accordingly, the court reversed the circuit court's decision to grant summary judgment in favor of the hospital and remanded the action for further proceedings. *Id.* at 911.

Similar to the situation in *Gaither*, there is no evidence currently before the Court in this case to suggest that Plaintiff should have been on notice that the tank car previously leaked and was repaired and Plaintiff should have inquired about it within two years of the accident.  In fact, this case is even stronger than the facts in *Gaither* because there the plaintiff at least knew about City Hospital and the fact it owed him a duty of care; here, however, there is nothing to indicate that Plaintiff even knew about Rescar's existence before he received the discovery responses from Arkema.  In addition, unlike the situation in *Cart,* it appears that Rescar was a complete stranger to Plaintiff and there is nothing to suggest that Plaintiff would have had any reason to make any inquiry of Rescar and its involvement.  In such a case, it would be nonsensical to saddle a plaintiff with discovering evidence which the plaintiff had no reason to believe existed in the first instance.  Although Rescar states that a reasonable and diligent plaintiff investigating the tank car would have uncovered the alleged claims before the statute of limitations ran, Rescar cites no circumstances which would have put Plaintiff on notice to make such inquiry until Arkema turned over the information in discovery.  At best, Rescar's argument is one for a jury to decide and not for the

---

[8]The court also found that, because the plaintiff was an adult, the fact his parents did not inform him of conversations they had with the treating physicians was irrelevant. *Id.*

Court to decide on a Motion to Dismiss.[9] Thus, the Court finds that Rescar's Motion to Dismiss must be denied.

### III.
### CONCLUSION

Accordingly, for the foregoing reason, the Court **DENIES** Rescar's Motion to Dismiss. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 17, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[9]*See generally* Syl. Pt. 3, *Stemple v. Dobson*, 400 S.E.2d 561 (W. Va. 1990) (holding "[w]here a cause of action is based on tort . . ., the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury"); Syl. Pt. 4, *Hill v. Clarke*, 241 S.E.2d 572 (W. Va. 1978) (holding "[t]he question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury"); *compare with Goodwin v. Bayer Corp.*, 624 S.E.2d 562, 567 (W. Va. 2005) (per curiam) (stating "summary judgment can and should be granted on the basis of an applicable statute of limitations when no genuine issue of material fact exists as to whether the statute of limitations has been violated").